## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**EZEQUIEL MENDOZA,**

      **Petitioner,**

v.                                                                  **CASE NO. 8:12-cv-2329-T-27JSS**
                                                                    **CRIM. CASE NO. 8:10-cr-62-T-27JSS**

**UNITED STATES OF AMERICA,**

      **Respondent.**

_____/

## O R D E R

**BEFORE THE COURT** are Petitioner's Second Amended Motion to Vacate, Set Aside or

Correct Sentence pursuant to 28 U.S.C. § 2255 (cv Dkt. 20), and the Government's Motion to

Dismiss (cv Dkt. 27).[1]  Upon consideration, the Government's Motion to Dismiss is GRANTED,

and Petitioner's Second Amended Section 2255 motion is DISMISSED.

## PROCEDURAL BACKGROUND

On August 24, 2010, Petitioner pleaded guilty, pursuant to a written plea agreement, to Count

One of the Indictment which charged Petitioner with conspiracy to distribute and possess with the

intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846 and

841(b)(1)(A) (cr Dkts. 64, 77, 87).  On December 6, 2010, Petitioner was sentenced to two hundred

sixty-two (262) months imprisonment to be followed by 60 months supervised release (cr Dkt. 112).

Judgment was entered on December 7, 2010 (cr Dkt. 115).

Petitioner did not file a timely notice of appeal.  He did, however, file a Motion Requesting

---

[1]Although afforded the opportunity, Petitioner did not file a response to the Government's Motion to Dismiss
(see cv Dkt. 22, p. 2).

Permission to File a Direct Appeal After Deadline (cr Dkt. 152) on April 17, 2011.  This Court denied the motion (cr Dkt. 154).  On May 3, 2011, Petitioner filed a notice of appeal of his judgment of conviction (cr Dkt. 156).  On February 15, 2012, the United States Court of Appeals for the Eleventh Circuit dismissed the appeal pursuant to the appeal waiver in Appellant's plea agreement (cr Dkt. 175).

On October 9, 2012, Petitioner filed his initial Section 2255 motion (cv Dkt. 1).  He filed an Amended Section 2255 motion on December 13, 2012 (cv Dkt. 8), and a Second Amended Section 2255 motion on October 22, 2014 (cv Dkt. 20).  The Government filed its Motion to Dismiss, contending that Petitioner's Section 2255 motion is 1) time-barred, 2) barred by the collateral attack waiver in his plea agreement, and 3) without merit.

## DISCUSSION

### I. Timeliness

The Government argues that Petitioner's Section 2255 motion is time-barred.  Although the Court disagrees that the entire Second Amended Section 2255 motion is time-barred, several of the claims alleged therein are time-barred.

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), effective April 24, 1996, establishes a one-year limitation period for Section 2255 motions.  *See Goodman v. United States*, 151 F.3d 1335, 1336 (11th Cir. 1998).  Specifically, Section 2255 provides that the one-year limitation shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

2

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). *See also Pruitt v. United States*, 274 F.3d 1315, 1317 (11th Cir. 2001).

The Judgment in Petitioner's criminal case was entered on December 7, 2010 (cr Dkt. 115). Petitioner did not file a timely notice of appeal.  Nevertheless, he filed a notice of appeal of his judgment of conviction on May 3, 2011 (cr Dkt. 156).  In its Motion to Dismiss Appeal, the Government moved to dismiss the appeal based on the appeal waiver in Petitioner's plea agreement.[2] The Government did not move to dismiss the appeal on the ground that Petitioner failed to file a timely notice of appeal.  And, the Eleventh Circuit did not dismiss the appeal as untimely.  Rather, it dismissed the appeal pursuant to the appeal waiver (cr Dkt. 175).

The deadline in Rule 4(b), Fed.R.App.P., for filing a notice of appeal in a criminal case is not jurisdictional.  *United States v. Lopez*, 562 F.3d 1309, 1313 (11th Cir. 2009).  However, if the Government objects to an untimely notice of appeal, the appellate court must apply the time limits of Rule 4(b) and dismiss the appeal.  *Id.* at 1314.  In Petitioner's case, the Government did not move to dismiss the appeal as untimely.  Therefore, the Government forfeited its objection to the untimely notice of appeal.  *See id*.  Accordingly, the Eleventh Circuit had jurisdiction over Petitioner's appeal.

Because the Eleventh Circuit had jurisdiction over the appeal, Petitioner's  judgment of

---

[2]The court takes judicial notice of the Eleventh Circuit Court of Appeals' online case docket for case no. 11-12240, Government's Corrected Motion to Dismiss Appeal, available at https://ecf.ca11.uscourts.gov/cmecf/servlet/. *See also Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (approving court's decision to take judicial notice of online case docket).

conviction became "final" under Section 2255(f)(1) on May 15, 2012, when the ninety-day period for seeking certiorari review (of the February 15, 2012 dismissal of the appeal) by the Supreme Court expired. *Clay v. United States*, 537 U.S. 522, 532 (2003). *See also Kaufmann v. United States*, 282 F.3d 1336, 1339 (11th Cir. 2002) (holding that a judgment becomes "final" when the time for filing a petition for writ of certiorari expires). Petitioner therefore had one year from that date, until May 15, 2013, to timely file a Section 2255 motion. He filed his initial Section 2255 motion on October 9, 2012 (cv Dkt.1). Therefore, Petitioner's initial Section 2255 motion was timely filed.

Nevertheless, even though the initial Section 2255 motion was timely, the Second Amended Section 2255 motion, signed on October 14, 2014 (see cv Dkt. 20, p. 14), clearly falls outside the limitation period (which expired May 15, 2013). And, the Second Amended Section 2255 motion does not merely assert the same claims raised in the initial Section 2255 motion. Rather, the Second Amended Section 2255 motion raises several new claims. The new claims are therefore untimely and barred from federal review unless they relate back to a timely-filed claim in the original Section 2255 motion. *See Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) ("'Relation back' causes an otherwise untimely claim to be considered by treating it as if it had been filed when the timely claims were filed.").[3]

To relate back to a timely Section 2255 motion, a subsequently presented claim must arise from the same conduct and occurrences that formed the basis of the timely asserted claims. See Fed. R. Civ. Proc. 15(c)(1)(B). "[T]he untimely claim must have more in common with the timely filed

---

[3]In his June 18, 2013 Brief in support of his Amended Section 2255 motion (cv Dkt. 17), Petitioner asserted the same claims raised in his Second Amended Section 2255 motion. Even if the court was to construe the Brief as a Section 2255 motion, and therefore consider the claims filed as of June 18, 2013, any new claim that did not relate back to the initial Section 2255 motion would still be untimely, as the limitation period expired on May 15, 2013.

claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport*, 217 F.3d at 1344 (citations omitted).  To relate back, "the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." *Id*. (citations and internal quotation marks omitted).

Petitioner's original Section 2255 motion raised the following four claims:

1) counsel was ineffective in allowing Petitioner to enter into a plea agreement before informing Petitioner a) what level of assistance the Government considers "substantial" when deciding whether to file a substantial assistance motion pursuant to Rule 35(b), Fed.R.Crim.P., or motion for a downward departure from the sentencing guideline range, b) at what amount a fine is considered excessive, c)  that he was "responsible for" any diminished value of forfeited property, d) that the Government intended to forfeit Petitioner's assets, and e) of the maximum sentence and potential sentences, forfeitures, and fines he was facing;

2) counsel was ineffective in failing to notify the court that Petitioner did not read, write, and comprehend any language, including Spanish;

3) Petitioner's rights under Rule 11, Fed.R.Crim.P., were violated during the change of plea hearing because the court a) directed him to "waive his hand" if he did not understand a question from the court, rather than have Petitioner verbally answer the question, b) failed to inform him that he could confront adverse witnesses and present witnesses, c) failed to inform him of the maximum or minimum fine he faced, and d) failed to inform him of the maximum sentence he faced; and

4) counsel was ineffective during direct appeal because counsel a) lacked the ability to adequately represent Petitioner on appeal, b) filed a brief that was merely a duplicate of Petitioner's sentencing memorandum, and c) failed to adequately communicate with Petitioner regarding the

appeal.

(cv Dkt. 1).[4]

Petitioner's Second Amended Section 2255 motion raised the following ten claims:

1-10. counsel was ineffective

1) in failing to review the Presentence Investigation Report (PSR) with Petitioner prior to sentencing;

2) in failing to argue that Petitioner was eligible for the "fast track" program;

3) in failing to advise Petitioner that he would be deported if he pleaded guilty;

4) in failing to spend adequate time with Petitioner prior to Petitioner entering into the plea agreement;

5) in failing to argue sentencing disparity between Petitioner and other defendants convicted of similar offenses;

6) in allowing Petitioner to enter into the plea agreement before reviewing discovery, the sentencing guidelines, and Petitioner's criminal history with Petitioner;

7) in failing to advise Petitioner regarding "what qualifies as 'Substantial Assistance;'"

8) in allowing Petitioner to enter into a plea agreement before reviewing the PSR with Petitioner, and before Petitioner saw how "counsel would perform for him at sentencing;"

9) in failing to call a witness (defense counsel's investigator) to testify during the sentencing hearing; and

10) in failing to adequately represent Petitioner on direct appeal.

---

[4]The Amended Section 2255 motion (cv Dkt. 8) raised the same claims asserted in the initial Section 2255 motion, except it omitted the claims that 1) counsel was ineffective during direct appeal, and 2) Petitioner's rights were violated during the sentencing hearing.

6

(cv Dkt. 20).

Grounds 1, 2, 3, 4, 5, 6, 8, and 9 of Petitioner Second Amended Section 2255 motion do not arise out of the same set of facts as the original claims.  Consequently, these claims do not relate back to his timely filed initial Section 2255 motion.[5]  Additionally, Petitioner has not alleged or shown any extraordinary circumstances to warrant equitable tolling.[6]  Accordingly, these grounds are time-barred and will be dismissed.

Grounds Seven and Ten of the Second Amended Section 2255 motion, however, are not time-barred because they relate back to the initial Section 2255 motion.  Specifically, Ground Seven relates back to Petitioner's claim in Ground One of the initial Section 2255 motion that counsel was ineffective in failing to advise Petitioner regarding what level of assistance the Government considers "substantial" when deciding whether to file a Rule 35(b) motion, or motion for a downward departure.  And Ground Ten relates back to Ground Three of the initial motion, in which Petitioner alleged that counsel rendered ineffective assistance during his direct appeal proceedings.  Accordingly, Grounds Seven and Ten will be reviewed on the merits.

## II. Waiver and Merits

Petitioner's written plea agreement includes an express waiver of his right to appeal or

---

[5]The claims do not relate back merely because Petitioner raised claims of ineffective assistance of counsel in his initial Section 2255 motion.  *See United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) ("New claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision."); *Espinosa v. United States*, 330 Fed. Appx. 889, 892 (11th Cir. 2009) (unpublished) (claims concerning counsel's pretrial performance did not relate back to claims raised in initial § 2255 motion alleging ineffective assistance of counsel at trial and sentencing because claims were not "tied to a common core of operative facts").

[6]The limitations period under Section 2255(f) is subject to equitable tolling.  *See Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (holding that "[e]quitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence").

collaterally attack his sentence.[7]  An appeal waiver in a plea agreement is enforceable if the waiver is made knowingly and voluntarily.  *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001); *United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993). An appeal waiver will be enforced if the Government demonstrates either: (1) that the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) that the record clearly shows that the defendant otherwise understood the full significance of the waiver.  *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997). A knowing and voluntary appeal waiver precludes a defendant from collaterally attacking his conviction in a Section 2255 motion.  *Williams*, 396 F.3d at 1342.

During the plea colloquy, Petitioner indicated that he understood the consequences of the appeal waiver, including the provision barring a collateral attack:

> THE COURT: If you go over to the following page, paragraph five, the government has inserted very significant limitation on your rights to an appeal. This language is put in to restrict, to limit your right to appeal to three issues and only three issues. It does say at the end that if the government takes an appeal in this case then you may appeal anything you wish, but understand it is very unlikely that the government appeals; and therefore, you're going to be bound by the limitations here.
>
> These limitations basically say that the three grounds you might raise on an

---

[7]The waiver states:

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(Cr Dkt. 64, pp. 9-10, ¶5) (emphasis in original).

appeal will occur if first something about your sentence is for more than the law allows.  If that happens, that makes the sentence illegal and you can't appeal an illegal sentence.

The second way you can appeal under this provision will occur if on your sentencing day the Judge calculates your guidelines at a particular level but doesn't think that that calls for enough punishment and he sentences you at a higher range, you can appeal that higher sentencing.

And then the third way you can appeal under this provision will occur if something about the sentence or the sentencing proceeding violates the constitution. Then it says you can take what is actually a very narrow issue up under the Eighth Amendment to the Constitution.

The effect of this language is that it restricts those issues you can raise on appeal and that means an appeal that you would take right after your sentence or one that you might want to take later on, after you've done some time, by way of what we call a collateral appeal. This is a significant limitation. *If you two gentlemen [Petitioner and co-defendant Gomez] do not understand it, please raise your hands. All right, good.*
. . .

THE COURT: And let me see, Mr. Mendoza, same thing. Anybody promise you anything other than what is set out in your plea agreement to get you to plead?

THE DEFENDANT: No.

THE COURT: Anybody promised you a particular sentence?

THE DEFENDANT: No.

THE COURT: Has anybody threatened you or a member of your family to get you to plead?

THE DEFENDANT: No.

THE COURT: Feel like anybody is forcing you into this decision or that you have been tricked in any way?

THE DEFENDANT: No.

THE COURT: You have been represented here by Mr. Cox. Do you have any complaints about anything your lawyer has done in your behalf?

THE DEFENDANT: No.

. . .

THE COURT: Now your plea agreement, and in Mr. Tapia's case your notice here, sets forth a factual basis. I'm required to take a factual basis on the record here. I want you to listen up to what Ms. Peluso says the government can prove, because I'll have a couple of follow-up questions for each of you.

. . .

THE COURT: All right. Mr. Mendoza, you heard your name mentioned a number of times in the factual recitation here as to the role you played. Is this an accurate statement of what you did in this matter?

THE DEFENDANT: Yes.

THE COURT: Anything stated by Ms. Peluso that you want to correct?

THE DEFENDANT: Yes.

THE COURT: What is that? Anything you wish to correct?

THE DEFENDANT: Yes, but just that.

THE COURT: Tell him to tell you what he wishes to correct.

THE DEFENDANT: Just about Penaloza, that I don't know him. I did not meet him until I was here.

THE COURT: Okay. All right. That's not particularly important today. Do you understand that?

THE DEFENDANT: Okay.

. . .

THE COURT: Okay. All right. For those two of you that have plea agreements, then the last part of the plea agreements says that it is the entire agreement, there are no other deals, and you confirmed that to me. And then there's, in each of your two cases, a certification that says that you have read the plea agreement or someone read it to you and that you understand it. Mr. Mendoza, was this plea agreement read to you?

THE DEFENDANT: Yes.

THE COURT: Do you understand it?

THE DEFENDANT: Yes.

THE COURT: Anything that I have said about it today that confuses you in any way?

THE DEFENDANT: No.

. . .

THE COURT: Good. Now, gentlemen, I'm about to conclude this. Before I do so, I always tell the people I'm talking with that it doesn't matter to us whether you plead guilty. Each one of you has an absolute right to fight the charges at a trial if you wish. If while we have been together today you have started to think you would like to have a trial rather than plead guilty, that's fine with me.  Tell me that and we'll put you on the trial docket. On the other hand, if you are satisfied of your guilt and believe it's in your best interest to plead guilty, if that's what you wish to do, then let me know that and we'll wrap this up.

Mr. Mendoza, what do you want to do?

THE DEFENDANT: Guilty.

. . .

THE COURT: Okay. I'm going to find that Jesus Tapia, Zacarias Gomez and Ezequiel Mendoza are each alert and intelligent individuals. I'm satisfied from speaking with them that they are coherent. They understand the allegation against them in Count I, as well as the potential punishment on that count. I have explained to each their constitutional rights they are giving up by entering their plea. I'm satisfied they understand those rights as well and they're voluntarily waiving them.

Mr. Gomez and Mr. Mendoza's case is a written plea agreement which appears to contain all the promises made to them. As for all three it does not appear that there are any inappropriate promises or inducements, nor does it appear that any has been threatened, forced or coerced into pleading guilty. There's a factual basis to support the conspiracy allegations. Each has been represented by a competent lawyer with whom they indicate they are satisfied.

So, gentlemen, from everything that appears today your pleas are being entered freely and voluntarily with an understanding of the consequences. I'm going to so find and recommend the matter to proceed forward to sentencing.

(cr Dkt. 133, pp. 20-34).  The record supports the finding that Petitioner entered a knowing and

voluntary guilty plea.[8]   The record also shows that the magistrate judge specifically questioned Petitioner about the appeal and collateral attack waiver.  Consequently, the waiver in Petitioner's plea agreement is enforceable.  *Williams*, 396 F.3d at 1341.

**Ground Seven**

Petitioner contends that he "entered into a [sic] agreement to provide assistance to the Government under the pretense that such assistance would cause the Government to ask the court to reduce the defendant's sentence."  (cv Dkt. 20, docket p. 18).  He argues that counsel was ineffective in failing to inform him what level of cooperation qualifies as "substantial assistance." He contends that had counsel explained what the Government considered "substantial assistance," he would not have pleaded guilty.

A voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea.  *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992).  Petitioner's ground alleges ineffective assistance rendered before entry of his guilty plea.  Petitioner's knowing and voluntary plea waived this antecedent non-jurisdictional ground because the ground does not implicate the validity of the plea.  *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000), *cert. denied*, 531 U.S. 919 (2000).

_____

[8]The record shows that the magistrate judge in the remainder of the plea colloquy discussed with Petitioner the nature and elements of the charged offense, the factual basis for the charge, the rights he forfeited by pleading guilty, and the possible sentence (including imprisonment) that he faced upon conviction (cr Dkt. 133, pp. 9-20).  *See Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) ("For a guilty plea to be entered knowingly and intelligently, the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternatives that are available."). *See also United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) ("A court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2)  understands the nature of the charges, and (3) understands the consequences of his plea.").

Finally, even if review of Ground Seven was not barred by the guilty plea or collateral attack waiver, Petitioner cannot obtain relief on the merits. Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

A petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Here, Petitioner's plea agreement contained a cooperation provision to be applied under U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or Federal Rule of Criminal Procedure 35(b) (cr Dkt. 64, p. 4-5, ¶8). The provision stated, in pertinent part, that "the defendant understands that *the determination as to whether 'substantial assistance' has been provided. . .rests solely with the United States Attorney for the Middle District of Florida*, and the defendant agrees that defendant cannot, and will not, challenge that determination, whether by appeal, collateral attack, or

13

otherwise." (Id.) (emphasis added). Because it was clearly set forth in the plea agreement that it was in the Government's sole discretion to determine whether Petitioner provided assistance that warranted a sentence reduction,[9] counsel did not render deficient assistance in failing to inform Petitioner what level of cooperation would amount to "substantial assistance." Accordingly, Ground Seven does not warrant relief.

**Ground Ten**

Petitioner contends that counsel rendered ineffective assistance on appeal. Specifically, Petitioner asserts counsel was ineffective 1) in arguing on appeal that Petitioner's 262-month sentence was excessive, after counsel had argued in his sentencing memorandum in this court that a 262-month sentence was fair, and 2) for merely "reformatting" his sentencing memorandum into an appellate brief.

Claims that appellate counsel provided ineffective assistance are analyzed under the two-part test set forth in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim, Petitioner must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, Petitioner would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

The Eleventh Circuit dismissed Petitioner's appeal based on his validly entered appeal waiver. Additionally, Petitioner has failed to identify any meritorious claim that could have been raised on appeal. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) ("To determine whether [an ineffective assistance of appellate counsel claim has merit], we must decide whether the

---

[9]The plea agreement indicates that the court interpreter read the plea agreement to Plaintiff in Spanish (cr Dkt. 64, p. 16). Additionally, during the change of plea hearing the magistrate judge explained the substantial assistance provision in the plea agreement, and Petitioner confirmed that he understood the provision (cr Dkt. 133, p. 16).

arguments the defendant alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal.") (citing *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988)); *Diaz v. Sec., Dep't of Corr.*, 402 F.3d 1136, 1144-45 (11th Cir. 2005) (appellate counsel is not ineffective for failing to raise a non-meritorious claim on direct appeal). Therefore, Petitioner cannot show that but for appellate counsel's actions he would have prevailed on appeal. Accordingly, Ground Ten does not warrant relief.

Accordingly, it is **ORDERED AND ADJUDGED** that the Government's Motion to Dismiss (cv Dkt. 27) is **GRANTED**. Petitioner's Second Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (cv Dkt. 20) is **DISMISSED**. The **Clerk** is directed to enter judgment against Petitioner and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To merit a COA, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. See 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Petitioner cannot make the requisite showing because he cannot demonstrate that reasonable jurists would debate whether the Court's procedural rulings were correct, or whether the Section 2255 motion stated a substantial

denial of a constitutional right. And because Petitioner is not entitled to a COA, he is not entitled

to appeal *in forma pauperis*.

**DONE AND   ORDERED** in Tampa, Florida, on _February 11ᵗʰ_, 2016.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy furnished to:
*Pro Se* Petitioner
Counsel of Record

16